STATE, EX REL. GUSTAVUS W. RADER ET AL., v. TOWN-
SHIP COMMITTEE OF THE TOWNSHIP OF UNION.

1. The obligation of a contract which, when made, was unenforceable by
   reason of some irregularity, but which has been validated by reason
   of a subsequent law, is protected by the constitution to the same ex-
   tent as if the contract had been strictly legal at first.
2. The obligation of such a contract includes the remedies which would
   have been available for its enforcement if it had been valid when
   made, or such other remedies as may have been lawfully substituted
   therefor.

On demurrer to return to alternative writ of *mandamus.*

Argued at February Term, 1882, before Justices DIXON
and REED.

For the relators, *Wm. P. Wilson, Wm. C. Spencer* and
*Robert S. Green.*

For the defendants, *Cross, Bergen & Noe.*

The opinion of the court was delivered by

DIXON, J.    The relator having amended his alternative
writ of *mandamus* so as to meet the objections which prevailed
against it in *Rader* v. *Township of Union,* 14 *Vroom* 518, the
township committee has made return, setting forth in sub-
stance that it has no money to pay the relator's judgment and
no lawful means of raising any.    On demurrer to this return
the case is presented for decision.

The principal question is indicated by the following facts:
The contract upon which the relator's judgment was recovered
was made with the commissioners of public roads in the
southeasterly road district of the township of Union, acting
under their charter of March 29th, 1871, (*Pamph. L., p.*
1034); this charter was held to be unconstitutional, for want

of a proper declaration of its object in its title, and the contract was therefore regarded as originally unwarranted by any law and unenforceable, (*Rader* v. *Township of Union*, 10 *Vroom* 509, 519 ; *S. C.*, 12 *Vroom* 617) ; by a law passed April 1st, 1872, (*Pamph. L.*, *p.* 972,) the act of 1871 was repealed, but the contract was validated and made obligatory upon the defendants, and they were authorized to issue bonds of the township of Union and borrow money for the payment of such sums as might be due upon it, (*Rader* v. *Township of Union*, 14 *Vroom* 518) ; afterwards, on April 21st, 1876, the legislature enacted that township bonds should not be issued save upon petition and resolution of the taxpayers of the township, (*Rev.*, *p.* 1202, § 5,) conditions which in the present case have not been complied with, and the question is whether this last act is operative against the relator. He insists that it is unconstitutional as to him, because impairing the obligation of his contract ; while the defendants contend that the contract has not, and never had any constitutional obligation, and that all of the relators' rights, since they spring out of the legislation of 1872, are subject to legislative modification or repeal.

The only obligation which the constitution guards is the legal obligation—the obligation which is recognized by, and results from the law of the state in which the contract is made. 3 *Story on Const.*, § 1374. Moral obligations are, of course, beyond the reach of human enactments. Says the Supreme Court of the United States : " The obligation of a contract is the means provided by law by which it can be enforced —by which the parties can be obliged to perform it ; whatever legislation lessens the efficacy of these means impairs the obligation." *Louisiana* v. *New Orleans*, 102 *U. S.* 203. Thus it appears that the constitutional obligation of a contract is not anything inherent directly in the contract itself, but is to be found in the law which governs it. There is nothing in the language of our organic laws suggestive of any distinctions among the obligations of contracts. All such obligations, as widely as they can be the subject of legislation,

are referred to as if embraced in a single class. In the provision of our state constitution concerning remedies, only those existing when the contract was made are protected, but the clause regarding obligations is unlimited, and whatever may, with propriety, be termed the obligation of a contract is rendered inviolable. Now, it seems to me that among such obligations may be ranked those imposed by laws curing illegality in prior contracts, as well as those arising from laws in existence when the contract was made. We commonly speak of these subsequent statutes as validating the contract, making the contract binding, thus ascribing to the contract all the force which the law possesses; and in all suits to vindicate the rights which the contract and the law together perfected, the contract alone would be pleaded as the basis of legal obligation. True, a distinction may be drawn between strictly legal contracts and bargains originally unenforceable but validated by subsequent laws, upon the ground that in the former class the parties might be regarded as contracting in view of the laws that bound them; but when we remember that, in the latter class also, the parties must be considered as bargaining in view of the power of the legislature to pass laws which should bind them, the distinction becomes shadowy and unimportant. If, in the one case, the parties have agreed to be bound at once, in the other they have agreed to be bound as soon as the legislature shall so enact, and when the enactment is made, they then are bound according to the terms of their agreement. In both cases it is equally proper to designate the power which binds them as the obligation of their contract. This being so, the obligation, as soon as it comes into existence, passes under the shield of the constitution.

If we turn from the mere language of this constitutional provision to the spirit which may be presumed to have dictated it, it will, I think, there also appear that no difference should be attempted between these two classes of contracts. It is unjust and productive of general inconvenience to impair the obligations which parties have voluntarily assumed, because honest men act upon the expectation that such obliga-

tions will be permanent, otherwise they cannot prudently act at all. But equally, when parties have contracted to assume obligations, but have failed of their purpose by reason of non-compliance with some rule of conduct, and afterwards a law remedies the defect, and the obligations are thus legalized, then also they act upon the same expectation ; and it would be as unjust and inconvenient to society in the latter case as in the former to deny to men those rights in expectation of which they have performed their own legal duties.

Hence I conclude that the obligation of a contract originally unenforceable, but validated by subsequent law, stands upon the same footing as if it had been strictly legal at first.

With regard to the particular contract now under review, there is another consideration leading to the same conclusion. The principals in the contract were the relator and the public, the latter acting through the commissioners of the road district as their agent. But because of the improper title of the statute of 1871, the authority of the agent was defective, and the contract was of imperfect obligation. The law of 1872 cured this defect and ratified the contract. Now, ratification, when it binds at all, binds as fully, to all intents and purposes, as original authority. " *Omnis ratihabitio retrotrahitur, et mandato priori œquiparatur.*" And a ratification, once deliberately made, becomes, *eo instanti*, obligatory, and cannot be afterward revoked or recalled. *Story on Agency*, §§ 244, 250. · This contract is therefore now as valid as if made under a constitutional law.

Hitherto the expression used to denote that which was perfected by the law of 1872, has been " the obligation of the contract." It remains to notice that this embraces the duty of the defendants to borrow money by issuing township bonds, in order to pay the relator's debt. This duty constitutes an important, indeed, the only valuable remedy of the relator. The power of assessment, even if an improvement has been made which will justify its exercise, (a fact not shown in the record,) is by no means so advantageous to him. Now, in legal parlance, the obligation of a contract includes the reme-

dies for its enforcement. Such is the purport of the language already quoted from the opinion of the Federal Supreme Court in Louisiana *v.* New Orleans, and such is also the view of this court, plainly expressed in *Baldwin* v. *Flagg,* 14 *Vroom* 495, where it is said : " The effort to draw any definite line of demarcation between a law affecting the obligation of a contract and one relating to the remedy upon it, within this constitutional provision, is impracticable. * * * The obligation of a contract is synonymous with the ability to enforce its performance." It is also true that the remedy now sought stands instead of one that was provided when the contract was made. For the act of 1871 declared that the commissioners of the road district should have power to borrow money to pay for the cost of the improvements which they were to make, and to issue their bonds therefor. In *Rader* v. *Southeasterly Road District,* 7 *Vroom* 273, it was held, assuming this act to be valid, that the revocation of this power by the statute of 1872 was justified, against prior contracts, upon the ground that the latter act conferred a like power upon the township committee, and so the remedies of the contractor were substantially preserved. If they had not been, the revocation would have been declared unconstitutional. Since, therefore, the legislature has substituted, for the remedy under the act of 1871, a similar remedy under the act of 1872, this is entitled to the same constitutional guaranty as that would have possessed, (*Munday* v. *Rahway,* 14 *Vroom* 338); and if we are right in our determination that the relator's contract now stands upon the same footing as if originally legal, this remedy is one which the legislature may not impair. That it would be impaired, if the act of 1876 were effective, is too plain for argument.

The result therefore is, that this statute cannot be applied to the relator's judgment; that the defendants have still the power to borrow money by issuing township bonds, and that their return to the *mandamus* is not well founded in law. Hence judgment upon the demurrer must be rendered against them.

In the similar cases of Magie, Drake, Davenport, Avery and Little, against the same defendants, the same conclusions are reached.